*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHIKISHA MONET TIDMORE,

Defendant-Appellant.

UNPUBLISHED
January 14, 2021

No. 348771
Kalamazoo Circuit Court
LC No. 2018-001392-FH

Before: REDFORD, P.J., and MARKEY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right her jury-trial convictions of reckless driving causing death, MCL 257.626(4), and reckless driving causing serious impairment of body function, MCL 257.626(3). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 10 to 35 years for the reckless driving causing death conviction and 2 to 15 years for the reckless driving causing serious impairment conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant crashed her automobile at approximately 10:40 p.m. on July 6, 2018 as she was driving on South Westnedge Avenue in Kalamazoo. South Westnedge is a one-way residential street with a speed limit of 35 miles per hour; it runs north and south and has three lanes.

Testimony and evidence introduced at trial established that defendant had picked up a friend, David McVay (McVay), who was in the front passenger seat of defendant's car when it crashed. Janice Maikoski (Maikoski) testified at trial that she witnessed the crash. Specifically, Maikoski testified that she had just turned her vehicle left onto South Westnedge, entered the middle lane, and merged into the rightmost lane in preparation for a right turn onto Wheaton Avenue, when she looked into her rearview mirror and saw defendant's vehicle "barreling down" on her. According to Maikoski, she thought she was going to be hit by defendant's vehicle. Maikoski testified that the road was clear before she turned onto South Westnedge. Defendant swerved to go around Maikoski's vehicle and lost control of her car. The evidence showed that defendant hit the curb; rolled her car, which sheared off a light pole at its base; hit Leif Culver

-1-

(Culver), who was walking his bike next to friends; uprooted a tree; and finally came to rest upside down after striking a fence and a parked car. McVay died at the scene of the accident. Culver was seriously injured.

Defendant told a Kalamazoo Department of Public Safety(KDPS) detective that she was travelling 35 miles per hour on South Westnedge when another car pulled out in front of her. Gary Latham (Latham), a crime lab specialist with KDPS, testified as an expert in accident reconstruction. He opined, based upon his calculations from various physical evidence at the scene, that defendant's car was travelling at approximately 78 miles per hour immediately before the crash. James Campbell (Campbell), a retired Michigan State Police trooper, testified as an expert in computerized event data recorders in automobiles. Campbell testified that data recovered from the event data recorder in defendant's car showed that she never applied her brakes and was traveling at 84 miles per hour (with foot pressure on the gas pedal) 2.5 seconds before the airbag deployed. Dr. Benedict Kuslikis, a toxicologist, testified that a blood sample taken from defendant after the accident showed that defendant had a blood alcohol level of .047, but that he did not have enough information to opine about her blood alcohol level at the time of the accident.

Shane McKendrick (McKendrick) witnessed the accident while sitting on the porch of his father's home on South Westnedge. He testified that he had heard sirens coming down South Westnedge and then heard an engine squeal like someone was speeding up. He looked and saw a "white Charger" that "tapped" a red car.[1] The red car swerved, lost control, and flipped over. According to McKendrick, police officers just drove past and kept following the white car. He stated that the red car was not speeding, and that he thought the white car was fleeing from the police officers. McKendrick denied telling the police that he thought the two cars were racing; however, after the defense had presented its witnesses, the prosecution called Officer Bradley Howe of KDPS, who testified that McKendrick had told him that he did not witness the actual crash but that he thought the white and red cars were racing because they were both travelling at a high speed.

Defendant testified that a white car pulled out in front of her suddenly, forcing her to swerve; after that, she did not remember anything until she found herself crawling out of the car. She testified that she thought she had braked but could have accidentally hit the accelerator instead. She denied driving at more than 40 miles per hour.

The jury convicted defendant as described. After sentencing, defendant moved for a new trial, which the trial court denied. This appeal followed. After filing her claim of appeal, defendant

---

[1] Defendant's car was red. Kalamazoo Public Safety Officers testified that the police dispatcher had stated that a white car or Dodge Charger was possibly involved in the accident when dispatching them to the scene, but that this was never confirmed.

moved this Court to remand for a *Ginther*[2] hearing on the issue of her trial counsel's alleged ineffectiveness; this Court denied the motion without prejudice.[3]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that her defense counsel was ineffective at trial in failing to object to the testimony of the prosecution's rebuttal witness, Officer Howe, and by agreeing to a special jury instruction regarding causation. We disagree in both respects.

We generally review for an abuse of discretion a trial court's decision whether to admit evidence during the rebuttal phase of trial. See *People v Figgures*, 451 Mich 390, 398; 547 NW2d 673 (1996). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019). However, because defense counsel did not object to the admission of this testimony, our review is limited to that of plain error. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). We review de novo whether the trial court properly applied the rules of evidence and any applicable statutes. *People v Lee*, 489 Mich 289, 295; 803 NW2d 165 (2011).

Defense counsel's affirmative approval of a jury instruction waives direct appellate review of that instruction. See *People v Carter*, 462 Mich 206, 214-216; 612 NW2d 144 (2000). However, we may review the issue in the context of defendant's claim of ineffective assistance of counsel. *People v Eisen*, 296 Mich App 326, 329-330; 820 NW2d 229 (2012). A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law; we review the trial court's factual findings, if any, for clear error, and review de novo whether defense counsel's conduct fell below an objective standard of reasonableness under prevailing professional norms and prejudiced defendant's trial. See *People v Gioglio (On Remand)*, 296 Mich App 12, 19-20; 815 NW2d 589 (2012).

In order to establish her claims of ineffective assistance of counsel, defendant must show that defense counsel's conduct fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the failure, the outcome of her trial would have been different. See *id*. at 22. Because a *Ginther* hearing was not held, this Court's review is limited to mistakes that are apparent on the record. See *id*. at 20. In reviewing the record, this Court must indulge a strong presumption that defense counsel's performance fell within the wide range of reasonable professional assistance. *Id*. at 22. This Court is "not only required to give counsel the benefit of the doubt with this presumption," it must "affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *Id*. (quotation marks and citations omitted). If this Court can conceive of a legitimate strategic reason for defense counsel's conduct, then this Court cannot conclude that defense counsel's

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] See *People v Tidmore*, unpublished order of the Court of Appeals, entered June 2, 2020 (Docket No. 348771).

conduct fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 22-23.

## A. REBUTTAL TESTIMONY

Defendant argues that her defense counsel was ineffective in failing to object to the prosecution calling Officer Howe as a rebuttal witness to its own witness, McKendrick. We disagree.

Generally, relevant evidence is admissible. See MRE 402. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence tending to impeach the credibility of a witness is always relevant. See *People v Mills*, 450 Mich 61, 72; 537 NW2d 909 (1995).

The prosecution called McKendrick as a witness at trial because he was in a position to witness the speed and actions of defendant's car before the accident. The testimony of an eyewitness to defendant's speed and driving immediately before the accident was relevant to several material facts at issue. MRE 401. Further, it appears from the record that the prosecution believed that McKendrick would testify, consistent with his prior statements, that he did not directly see the accident and that he thought the red car—defendant's car—was racing a white car on South Westnedge. However, McKendrick instead testified that he did in fact see the accident, and he denied that he had told officers that he thought defendant was racing another car or otherwise speeding. To the contrary, he testified that she was traveling at the speed limit. Once McKendrick testified in a way that was inconsistent with his previous statements, the prosecution was permitted to impeach him even though the prosecution had called him as a witness in its case-in-chief. See MRE 607; MCL 767.40a(6). Further, the prosecution could do so by introducing extrinsic evidence of the fact that McKendrick had made an earlier statement that was inconsistent with his trial testimony after providing him with the opportunity to deny or explain the previous statement. See MRE 613(b); *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). Accordingly, Officer Howe's testimony about McKendrick's earlier statement was admissible to impeach the credibility of McKendrick's account at trial.

Defendant does not directly argue that Officer Howe's rebuttal testimony should not have been admitted, but instead essentially argues that the prosecution was required to present this testimony during its case-in-chief, rather than during the rebuttal phase at the end of trial. We do not find the rules of trial procedure to be so rigid. As our Supreme Court has recognized, trial courts have broad authority to determine the order in which the parties may adduce proof; this is so, because courts must meet the complexities and contingencies of trial as those situations arise. See *Figgures*, 451 Mich at 398; see also MRE 611(a). Typically, rebuttal evidence is evidence admitted to "contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *Figgures*, 451 Mich at 399 (quotation marks and citation omitted). "[T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case-in-chief, but, rather whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant." *Id*.

The defense elicited testimony during the cross-examination of KDPS officers that the dispatcher had stated that there may have been another car (possibly white, or a Charger) involved in defendant's accident. Additionally, defendant testified that she was driving at a safe speed and only crashed because she was forced off the road by the driver of a white car.

Although the prosecution could have impeached McKendrick as soon as he made a prior inconsistent statement, it only became evident later in the proceedings that the defense was developing a theory that another car was the real cause of the accident. Consequently, impeachment evidence against McKendrick was rebuttal evidence because it directly related to weakening a theory developed by the defense. See *id*. Moreover, there was no indication that the prosecution called and impeached McKendrick as a subterfuge to get otherwise inadmissible evidence before the jury. See, e.g., *Jenkins*, 450 Mich at 262. Under these circumstances, it was within the range of reasonable and principled outcomes for the trial court to have allowed the prosecution to impeach McKendrick, through Officer Howe's testimony, during the prosecution's rebuttal case, rather than disallowing that testimony because the prosecution had not recalled Officer Howe during its case-in-chief. See *Clark*, 330 Mich App at 415. Because the trial court properly allowed the prosecution to elicit the impeachment testimony in its rebuttal case, defense counsel cannot be faulted for failing to object to the admission of Officer Howe's testimony during the rebuttal phase of the trial. See *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (stating that defense counsel is not ineffective for failing to raise a futile or meritless objection).

Even if the trial court could be said to have plainly erred allowing the prosecution to impeach McKendrick after its case in chief had ended, defendant has not demonstrated that, but for defense counsel's failure to object, there is a reasonable probability that the outcome of the trial would have been different. See *Gioglio,* 296 Mich App at 23. McKendrick's testimony as a whole was highly suspect. He claimed that his attention was drawn to the accident because he heard sirens and thought that police officers might be coming for him. He stated that he then observed police officers chasing a white car and that the officers continued their chase even after the accident. Every other eyewitness to the accident—other than defendant—stated that the only cars on the road were defendant's car and Maikoski's car. No other witnesses saw any other car speeding, let alone a speeding car being pursued by police officers with lights flashing and sirens blaring. Additionally, none of the officers involved in the investigation testified that there was a high-speed chase that preceded the accident. Moreover, McKendrick's contention that defendant was traveling at a safe speed was contradicted by the evidence from her car's event data recorder that showed she was driving at 84 miles per hour just 2.5 seconds before the crash and that she lost control while making a lane change, uprooted a tree, sheared off a light post, and only came to rest after sliding more than 100 feet and striking a parked car. McKendrick's version of events was, therefore, highly implausible even without Officer Howe's testimony. And the overwhelming evidence supported the conclusion that defendant was not forced off the road by some mysterious car involved in a police chase, but rather crashed when she attempted to pass Maikoski and lost control because she was traveling so fast that she had exceeded her car's ability to safely change lanes. Consequently, even if defense counsel had successfully prevented the prosecution from impeaching McKendrick's version of events, defendant has not shown prejudice. See *id*.

## B. SPECIAL JURY INSTRUCTION

Defendant also argues that defense counsel provided ineffective assistance by affirmatively agreeing to a special jury instruction. We disagree.

A defendant has the right to have the trial court properly instruct the jury. *People v Lambert*, 395 Mich 296, 304; 235 NW2d 338 (1975). A trial court's instructions are proper when, examining them as a whole, "the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *Martin*, 271 Mich App at 338 (quotation marks and citation omitted).

In order to convict defendant of the offenses at issue, the prosecution had to prove that defendant operated her car in willful and wanton disregard for the safety of persons or property, and that her operation of the car was both the factual cause and the proximate cause of the injuries to McVay and Culver. See MCL 257.626(2); *People v Schaefer*, 473 Mich 418, 435; 703 NW2d 774 (2005), mod in part on other grounds by *People v Derror*, 475 Mich 316, 334; 715 NW2d 822 (2006). A person's conduct is the factual cause of the result if the result would not have occurred "but for" the person's conduct. *Schaefer*, 473 Mich at 435-436. The term "proximate cause" is a "legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." *Id*. at 436. A defendant's conduct is the proximate cause when the victim's injury was the direct and natural result of the defendant's actions. *Id*.

An intervening cause supersedes and breaks the causal link between the defendant's conduct and the victim's injury, preventing defendant's conduct from being deemed the proximate cause. *Id*. at 436-437. The standard for determining whether an intervening cause severs the causal link is one of reasonable foreseeability. *Id*. at 437. If the intervening cause was reasonably foreseeable, then it will not break the causal link. *Id*. However, gross negligence and intentional misconduct are not reasonably foreseeable and will sever the causal link. See *People v Feezel*, 486 Mich 184, 195; 783 NW2d 67 (2010).

The trial court instructed the jury that to convict defendant of the two offenses of which she was charged, the jury must—in relevant part—find that defendant operated her car in willful or wanton disregard for the safety of persons or property, and must find that her operation of the car factually and proximately caused McVay's death and Culver's serious impairment of body function. The trial court did not instruct the jury generally regarding intervening superseding causes, but it did instruct the jury that a person's operation of a car is the proximate cause of an injury when the injury was the direct and natural result of the car's operation. Additionally, the trial court provided the jury with the following special instruction:

> You may consider that one who pulls out in front of another or changes into lanes in front of another on a several lane thoroughfare may generally represent a type of ordinary negligence that is reasonably foreseeable and not be a superseding cause of the victim's death and/or victim's injuries, but you are not required to do so.

The trial court explained why it gave that instruction:

As far as the second special instruction, I take from case law that has been provided to the court in terms of a particular situation regarding superseding causes of injuries and/or death, and I believe after consulting with the attorneys that it's appropriate given the facts in this case that that special instruction be given to the jury. I've included it. Parties have no objection to it.

The trial court's general instructions regarding factual and proximate cause were correct and adequately protected defendant's rights. See *People v Czuprynski*, 325 Mich App 449, 461-462; 926 NW2d 282 (2018). Further, the special instruction on a specific potential intervening cause—another car pulling out in front of defendant's car—adequately protected defendant's rights and fairly presented the issues to be tried. *Martin*, 271 Mich App at 338. The trial court instructed the jury that that defendant could not be said to have been the cause of the injuries at issue if the jury found that there was an intervening superseding cause, but reminded the jury that conduct that was reasonably foreseeable cannot constitute a superseding cause. Finally, although it noted the general foreseeability of cars changing lanes or pulling out in front of another car, the instruction made it clear that the jury was not precluded from finding that a car pulling out or changing lanes was a superseding cause under the specific facts of the case. The trial court's instruction correctly stated the law; in fact, multiple sections of the Michigan vehicle code, MCL 257.1 *et seq.*, explicitly state that drivers are expected to be aware of the possibility of other vehicles in their lane ahead of them, and to presume that the driver to the rear is at fault in a collision, absent evidence to the contrary. See, e.g., MCL 257.627(1) (assured clear distance statute); MCL 257.402(a) (rear end collision statute). Contrary to defendant's contention, the trial court's use of the word "generally" did not foreclose the jury from considering whether another car became a superseding cause of the accident by pulling out in front of defendant or changing lanes in front of her. Because the trial court's instruction was not erroneous, defense counsel's decision to approve the instruction did not fall below an objective standard of reasonableness under prevailing professional norms. See *Gioglio*, 296 Mich App at 22.

## III. CRUEL OR UNUSUAL PUNISHMENT

Defendant also argues that her sentence for reckless driving causing death was disproportionate and amounted to cruel or unusual punishment under Michigan's constitution.[4] Const 1963, art 1, § 16. We disagree. This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and constitutional principles to defendant's sentencing. See *People v Odom*, 327 Mich App 297, 303; 933 NW2d 719 (2019). We review for an abuse of discretion the trial court's exercise of its sentencing discretion. *Id*. A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes. *Id*.

---

[4] Although defendant does not raise a related claim under the Eighth Amendment to the United States Constitution, which prohibits cruel *and* unusual punishment, see US Const, Am VIII, the federal constitution provides narrower protection than the Michigan constitution. *People v Nunez*, 242 Mich App 610, 618 n 2; 619 NW2d 550 (2000). As a result, if a sentence "passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id*.

-7-

This Court has stated that grossly disproportionate sentences may constitute cruel or unusual punishment. *People v Posey*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 345491, 351834, and 346039); slip op at 9. However, "[a] sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual punishment." *Id.* "A defendant can only overcome the presumption by presenting unusual circumstances that would render a presumptively proportionate sentence disproportionate." *Id.*

Defendant's recommended minimum sentence range under the sentencing guidelines was 50 to 200 months. See MCL 777.64; MCL 777.21(3)(c). The trial court ordered defendant to serve a minimum sentence of 10 years in prison, which was within the recommended minimum sentencing range. Defendant does not argue that the trial court erred in calculating her guidelines range or relied on inaccurate information in sentencing her, nor has defendant identified any unusual circumstances that would defeat the presumption that her sentence is proportionate and therefore not cruel or unusual. *Posey*, ___ Mich App at ___; slip op at 9. Defendant suggests that her remorse, the fact that she did not intend to kill or permanently disable anyone, and the fact that all her previous offenses were nonviolent are grounds for concluding that her sentence was disproportionate. We disagree that any of these factors are unusual or grounds for concluding that the trial court was constitutionally required to impose a below-guidelines sentence. See *People v Daniel*, 462 Mich 1, 8 n 9; 609 NW2d 557 (2000) (holding that a defendant's remorse is not a sufficient mitigating factor to support an out-of-guidelines sentence under the then-mandatory sentencing guidelines); see MCL 257.626(3) and (4) (not requiring a specific intent to kill for conviction); *People v Hansford*, 454 Mich 320, 325-326; 562 NW2d 460 (1997) (stating that a trial court may properly consider a defendant's rehabilitative potential by examining his or her criminal history and applying the habitual-offender provisions).

Because defendant's sentence for reckless driving causing death was proportionate, we are required to affirm it. MCL 769.34(10); see also *People v Schrauben*, 314 Mich App 181; 886 NW2d 173 (2016) (holding that MCL 769.34(10) remained valid after our Supreme Court held that Michigan's sentencing guidelines scheme was advisory, not mandatory). Defendant acknowledges that this Court is bound by *Schrauben*, see MCR 7.215(C)(2), but argues that *Schrauben* was wrongly decided and urges this Court to declare a conflict with *Schrauben*. However, this Court has repeatedly declined to call a conflict with *Schrauben*, and defendant has not identified any reason to do so now. See, e.g., *Posey*, ___ Mich App at ___; slip op at 8-9.

## IV. STANDARD 4 BRIEF

In her Standard 4 brief[5], defendant raises several claims of error involving alleged discovery violations and errors in the admission of expert witness testimony, additional ineffective assistance of counsel claims, and newly discovered evidence. In particular, defendant argues that Latham, Campbell, and Dr. Kuslikis should not have been allowed to testify for the prosecution, because the prosecution failed to comply with MCR 6.201(A)(3) and the trial court did not first conduct a *Daubert*[6] hearing for each expert. Defendant did not preserve these claims of error by

---

[5] A supplemental appellate brief filed in propria persona by a criminal defendant under Michigan Supreme Court Administrative Order 2004-6, Standard 4.

[6] See *Daubert v Merrell Dow Pharm*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

raising them before the trial court, and we accordingly review them for plain error. See *Carines*, 460 Mich at 763. None of these claims merit relief.

## A. DISCOVERY VIOLATION

Defendant argues that the trial court erred by failing, as a sanction, to disallow the prosecution's expert witnesses from testifying because the prosecution did not provide her with the discovery required under MCR 6.201(A)(3). That court rule states that, upon request, a party must identify his or her proposed experts, must provide a curriculum vitae for each expert, and must provide either a copy of the expert's report or a written description of the expert's proposed testimony, opinion, and the underlying basis for the opinion. The trial court has the discretion to sanction a party who does not comply with discovery in several ways, including by precluding witness testimony. See MCR 6.201(J); *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010).

The record shows that defendant propounded discovery requests relating to the prosecution's expert witnesses under the court rule, but the record does not show whether the prosecution provided the required discovery for each expert. In the absence of any record evidence that the prosecution failed to provide the required discovery and that the trial court was made aware of that failure, it cannot be said that the trial court committed a plain or obvious error when it failed to sanction the prosecution for a discovery violation. See *Carines*, 460 Mich at 763. Even assuming that the prosecution did not comply with MCR 6.201(A)(3) for each witness, defendant also has not demonstrated that any error prejudiced her at trial. The trial court had the discretion to fashion an appropriate remedy for a discovery violation if that violation is brought to its attention. See *Rose*, 289 Mich App at 525. However, the sanction must be reasonable and appropriate under the totality of the circumstances:

> The exercise of that discretion involves a balancing of the interests of the courts, the public, and the parties. It requires inquiry into all the relevant circumstances, including the causes and bona fides of tardy, or total, noncompliance, and a showing by the objecting party of actual prejudice. However, the exclusion of a witness is an extreme sanction that should not be employed if the trial court can fashion a different remedy that will limit the prejudice to the party injured by the violation while still permitting the witness to testify. [*Id.* at 525-526 (quotation marks and citations omitted).]

Defendant admits that the prosecution gave notice that it intended to call each witness, but argues that the prosecution did not identify the witnesses as experts. She also concedes that defense counsel had a report of the data collected from the event data recorder in defendant's car and that Campbell was identified as the person who had prepared it. She also concedes that Dr. Kuslikis's name appeared on her comprehensive blood screen results. Therefore, defense counsel clearly had some idea that Campbell would testify about the data taken from the event data recorder and that Dr. Kuslikis would testify about defendant's toxicology results. There is no evidence that defense counsel requested additional information that he failed to receive or that he was otherwise unprepared to question the prosecution's experts. Under these circumstances, defendant has not shown that the extreme sanction of striking defendant's expert witnesses in their entirety was the appropriate sanction, even if the prosecution did violate the discovery rules. For these reasons,

defendant has not shown that, were it not for a plain error by the trial court in failing to sanction the prosecution, the result of the proceedings against her would have been different. See *Carines*, 460 Mich at 763.

## B. *DAUBERT* HEARINGS

Defendant also argues that the trial court erred by failing to hold a *Daubert* hearing for each of the prosecution's experts. We disagree.

If a trial court determines that a witness's "scientific, technical, or other specialized knowledge" would assist the jury "to understand the evidence or to determine a fact in issue," it may permit a "witness qualified as an expert by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." MRE 702. MRE 702 imposes a duty on trial courts to ensure that "that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012).

Defendant does not argue that the prosecution's expert witnesses did not assist the jury in properly understanding the evidence, that the experts were not in fact qualified to testify as experts, or that the fields of expertise at issue—accident reconstruction, event data recorders, and toxicology—were not valid fields of expertise that utilize well-known methodologies. Rather, she merely argues that the trial court could not admit these witnesses as experts in these fields without first holding an evidentiary hearing. That, however, is not an accurate statement of the law. The trial court had the discretion "to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted." *Kumho Tire Co, Ltd v Carmichael*, 526 US 137, 152; 119 S Ct 1167; 143 L Ed 2d 238 (1999); see also *People v Carll*, 322 Mich App 690, 700-701; 915 NW2d 387 (2018) (stating that the trial court's inquiry is flexible and depends on the type of expert testimony offered).

Michigan courts have long recognized accident reconstruction and toxicology as valid areas of expertise. See, e.g., *O'Dowd v Linehan*, 385 Mich 491; 189 NW2d 333 (1971) (discussing testimony by an expert in accident reconstruction); *Shaw v Bashore*, 353 Mich 31, 33; 90 NW2d 688 (1958) (noting testimony about blood alcohol levels by a toxicologist). The record shows that expert testimony would assist the jury in understanding the evidence and that the proposed experts intended to offer opinions in recognized fields of expertise with well-known methodologies. See *McFarlane*, 325 Mich App at 518-519 (stating that expert testimony is appropriate when the evidence concerns matters that are beyond the ken of ordinary persons to evaluate). The record also shows that the experts were each qualified by education, experience, and training to offer expert opinions in their respective fields. See MRE 702.

Dr. Kuslikis testified that he had been the director of toxicology at Spectrum Health in Grand Rapids for approximately 28 years. He stated that he had a Ph.D. from Michigan State University and had even done some postdoctoral studies at the University of Wisconsin. He also

worked as an analyst for five years, and had been admitted in courts as an expert at least 60 to 80 times.

Campbell testified that he had been a Michigan State Trooper for 31 years before his retirement. He served as an accident reconstructionist during that time covering nine counties. He first began performing accident reconstruction in 1991 and then transferred to advanced crash reconstruction in 1995. He received his national certification in 1999. Campbell testified that he had reconstructed between 60 to 70 crashes per year over his career, which amounted to thousands of reconstructions. He also had testified in court as an expert 65 times.

Officer Latham testified that he had been an officer for 20 years, and had been a lab specialist for 12 years. He stated as well that he had been certified in accident reconstruction since 2002 and had been admitted to testify as an expert more than a dozen times.

On this record, *Daubert* hearings were unnecessary. It was beyond reasonable dispute that all three witnesses met the qualifications for testifying in their respective fields. Each of their fields also had been recognized as fields of expertise in Michigan courts, and each expert plainly utilized well-known methodologies. It was also evident that their testimonies would aid the jury in understanding the evidence. Because this case involved an ordinary proceeding in which it would be appropriate to take for granted that the experts were reliable, there was no need for a *Daubert* hearing. See *Kumho Tire Co*, 526 US at 152. Defendant has not demonstrated plain error affecting her substantial rights with regard to the trial court's decision to allow the expert testimony. See *Carines*, 460 Mich at 763.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

In her Standard 4 brief, defendant also claims that defense counsel provided ineffective assistance in a variety of ways both before and during trial. Again, we review de novo whether defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and prejudiced defendant's trial. See *Gioglio*, 296 Mich App at 19-20.

## 1. FAILURE TO MOVE TO SUPPRESS STATEMENTS

Defendant argues that defense counsel was ineffective in failing to move to suppress two statements that she made to KDPS officers after the accident, one at the scene of the accident and one at a later time, because they were not voluntary. We disagree. It is well settled that only statements that a defendant voluntarily made are admissible against him or her at trial. See *People v Robinson*, 386 Mich 551, 557; 194 NW2d 709 (1972). The test for voluntariness is whether the statement was the product of an essentially free and unconstrained choice by the speaker, or whether the speaker's will had been overborne and his or her capacity for self-determination critically impaired. See *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988). The Court in *Cipriano* identified a nonexhaustive list of factors to consider when determining whether a person's statement was voluntarily made:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the

statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*. at 334.]

On this record, there was no evidence that defendant's capacity for self-determination was critically impaired when she gave either statement. With regard to the statement that she made at the scene of the accident, defendant maintains that her injuries were such that she was not capable of making a voluntary statement. Defendant has not presented any evidence to establish that she was severely injured at the time she made the statement, and a KDPS officer testified that, although upset, defendant was coherent and oriented when he spoke to her. See *Cipriano*, 431 Mich at 334. With regard to the statement she later made to a KDPS detective, defendant argues that the statement was not made voluntarily because the detective had told her that she could have her cell phone back if she came down to the station to discuss the accident. Even if true, a promise to return a cellular phone is not a promise of leniency, see *People v Givans*, 227 Mich App 113, 119-120; 575 NW2d 84 (1997), or otherwise the kind of inducement that might have overwhelmed the defendant's ability to make a voluntary statement, see *People v Conte*, 421 Mich 704, 754; 365 NW2d 648 (1984) (opinion by BOYLE, J.).

Defendant also argues that she was not advised of her legal rights before being asked questions at the scene of the accident and at the police station; however, defendant has presented no evidence that she was in custody at the time she was questioned. See *Clark*, 330 Mich App at 414-415 (stating that the obligation to advise a suspect of his or her rights applies only to custodial interrogations). Because there were no grounds for filing a motion to suppress, defense counsel cannot be faulted for declining to file such a motion. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) (stating that defense counsel has no obligation to make a frivolous or meritless motion). In any event, it is doubtful that defendant's statements to KDPS officers, which were generally non-incriminating and consistent with her statements at trial,[7] actually prejudiced the result of the proceedings against her. See *Gioglio*, 296 Mich App at 22-23.

## 2. FAILURE TO OBJECT TO EVIDENCE

Defendant also argues that defense counsel was ineffective in failing to object to the admission of evidence of defendant's blood alcohol level, the in-court identifications of defendant by various witnesses, and a photo of McVay trapped in the car. We disagree.

Again, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence is generally admissible. MRE 402. But

---

[7] Defendant argues that, without her statements at the scene of the accident, the prosecution could not have established that she was the driver of the wrecked car. This argument is overwhelmingly belied by the evidence presented at trial.

-12-

even when evidence is otherwise relevant and admissible, a court may still refuse to admit the evidence if—in relevant part—"its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." MRE 403.

The prosecution charged defendant with two offenses involving reckless driving, which required proof that defendant operated a vehicle in "willful and wanton disregard for the safety of persons or property." MCL 257.626(2). The evidence that defendant had a blood alcohol level of .047, which was more than half the legal limit, three hours after the accident, was relevant to whether she was driving with impaired reflexes and judgment, which implicated whether she drove with disregard for the safety of others. See *Feezel*, 486 Mich at 198-199. Defendant argues that the jury might have been confused about the import of her blood alcohol level since she was not charged with crimes involving driving while under the influence. However, the trial court instructed the jury that it was charged with determining whether defendant had driven recklessly and whether her conduct caused McVay's death and Culver's serious impairment of body function. Those instructions protected defendant from any jury confusion in that regard. See *Kowalski*, 492 Mich at 130 n 56 (noting that jurors are presumed to follow their instructions). Additionally, the fact that the evidence was damaging to defendant's version of events does not justify excluding the evidence under MRE 403. All relevant evidence is damaging to some extent. See *Mills*, 450 Mich at 75-76. The test for exclusion under MRE 403 is not whether the evidence is damaging; the test is whether "marginally probative evidence will be given undue or preemptive weight by the jury." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citation omitted). The toxicology evidence was not marginally probative of defendant's recklessness—it was highly relevant to whether she was driving with due regard for the safety of others; consequently, its probative value for determining whether defendant was driving recklessly was not substantially outweighed by the danger of unfair prejudice. See MRE 403.

The toxicology evidence was admissible and defense counsel did not provide ineffective assistance by failing to make a meritless objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Further, although the evidence was likely damaging to her case, in light of the other overwhelming evidence against her, defendant cannot show that the absence of this evidence would have resulted in a different outcome. *Gioglio*, 296 Mich App at 22-23.

Regarding the in-court identifications by various police witnesses, defense counsel had no grounds upon which to rest an objection. Generally, an identification may be inadmissible if the person making the identification was exposed to a tainted or unduly suggestive pretrial procedure. See *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995); see also *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001) (stating that the defendant must show that the pretrial identification procedure was so suggestive that it led to a substantial likelihood of misidentification). Defendant has not identified such a procedure. Defense counsel had no obligation to make a frivolous objection to these identifications. See *Ericksen*, 288 Mich App at 201.

Defense counsel also did not provide ineffective assistance by failing to object to the admission of a photograph of McVay still trapped inside the crashed car. The image was relevant as a visual aid to understanding the testimonies of the witnesses who responded to the scene of the accident. See *Mills*, 450 Mich at 72-74 (providing that images of a victim's injuries may be relevant to corroborate a witness's testimony). Further, it was relevant to establishing defendant's

identity as the driver of the car. Moreover, although relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice," MRE 403, the fact that the photograph was of an accident victim did not in and of itself require exclusion. See *Mills*, 450 Mich at 76. The image of McVay was not gruesome, and was not the type of image that would induce an emotional response such that there was a danger that "evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect." *Id*. at 75-76 (quotation marks and citation omitted). Consequently, the image was not subject to exclusion under MRE 403, and, for that reason, defense counsel cannot be faulted for failing to object on that basis. See *Ericksen*, 288 Mich App at 201.

### 3. PLEA NEGOTIATIONS

Defendant also argues that defense counsel provided her with ineffective assistance during pretrial plea negotiations by failing to properly inform her of the risks of rejecting a plea bargain. We disagree.

A defendant is entitled to the effective assistance of counsel during the plea-bargaining process. See *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). In order to demonstrate that she did not receive effective assistance during plea negotiations, defendant must show that defense counsel's assistance fell below an objective standard of reasonableness under prevailing professional norms and that there was a reasonable probability that, but for defense counsel's substandard advice, her plea would have been accepted. See *id*. at 592.

The only record evidence concerning any plea offers is a brief colloquy on the first day of trial between the attorneys and the trial court. The prosecution indicated that it would have dropped the second charge of reckless driving causing serious impairment and the habitual-offender enhancement if defendant had accepted its plea offer and pled to reckless driving causing death. Defendant acknowledged to the court that defense counsel had relayed the offer to her and that she had rejected it. She also agreed that she wanted a jury trial. On this record, there is no indication that defense counsel did not advise defendant of the benefits of taking the plea offer or the risks associated with proceeding to trial. Defendant has the burden to establish the factual predicate for her ineffective-assistance claim, which she has not done. *Id*. Accordingly, we cannot conclude that defense counsel's conduct during plea negotiations fell below an objective standard of reasonableness. See *Gioglio*, 296 Mich App at 22.

### 4. FAILURE TO REQUEST DURESS INSTRUCTION

Defendant also argues that defense counsel was ineffective in failing to request that the jury be instructed on the defense of duress. Specifically, she argues that the evidence showed that she only got into an accident as a result of the "duress" that she experienced when another vehicle cut her off. We disagree.

A defendant is entitled to a duress instruction if the defendant comes forth with evidence from which a reasonable jury could conclude that, in relevant part, another person threatened her or someone else with death or serious bodily harm, and that the defendant committed the offense at issue to avoid the threatened harm. See *People v Reichard*, 505 Mich 81, 88; 949 NW2d 64

(2020). The evidence must also show that the threat did not arise from the defendant's negligence or fault. *Id.*

In this case, there is no evidence that defendant felt compelled to drive recklessly in order to avoid a greater harm, see MCL 257.626(2), including such conduct as driving down a residential street at more than 80 miles per hour. Although defendant argues that she was compelled by "duress" to take evasive action when another car cut her off, her argument does not implicate the defense of duress. See *Reichard*, 505 Mich at 88. Rather, the question of whether defendant's accident was caused by being cut off by another car was properly addressed as an issue of intervening cause, as discussed earlier in this opinion. That question was before the jury, and it rejected that theory. Defense counsel did not provide ineffective assistance by failing to request an inapplicable jury instruction. See *Ericksen*, 288 Mich App at 201.

## 5. DEFENSE EXPERTS

Defendant also argues that defense counsel was ineffective in failing to retain defense expert witnesses, specifically an accident reconstructionist or toxicologist. We disagree. Defense counsel stated on the record that he had consulted with an accident reconstructionist, who reviewed the prosecution's report on the accident, and that he had determined that it was unnecessary to secure a defense expert. Although defendant claims that defense counsel could not reach that conclusion because he himself was not an expert in accident reconstruction, that is not the standard. The question is whether defense counsel's decision was properly supported by reasonable investigation such that his decision amounted to a reasonable professional judgment as a defense lawyer. See *People v Grant*, 470 Mich 477, 486-487; 684 NW2d 686 (2004). There is no record evidence that defense counsel's assessment of the need for a defense expert in accident reconstruction was not made on the basis of a reasonable investigation. See *id*.

In any event, defendant had the burden to demonstrate that her proposed expert witnesses would have testified favorably to the defense. See *People v Ackerman*, 257 Mich App 434, 455-456; 669 NW2d 818 (2003). And she has not identified any expert who would have testified favorably on her behalf with regard to the accident reconstruction or toxicology results. She merely speculates that some expert might have identified flaws in the prosecution experts' testimonies. Her speculation is insufficient to establish that defense counsel's decision not to call these experts amounted to ineffective assistance. See *id*.

## 6. DEFENDANT'S TESTIMONY

Defendant also argues that her defense counsel was ineffective in allowing her to testify. There is no evidence that defense counsel improperly advised defendant about her right to testify on her own behalf, see *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (holding that the defendant bears the burden to establish the factual predicate for his or her claim of ineffective assistance). Defendant has also not established that defense counsel provided ineffective assistance with regard to advising her on the risks associated with her decision to testify. See *Gioglio*, 296 Mich App at 22-23. She has further failed to establish that she was prejudiced as a result of her decision to testify, in light of the nature of her testimony and the other evidence against her. Accordingly, she has not met her burden to demonstrate ineffective assistance. See *id*.

## 7. SEARCH WARRANT

Defendant also argues that defense counsel was ineffective in failing to move to suppress the results of the search warrant authorizing the testing of her blood draw on the ground that the affidavit in support of the warrant was deficient. We disagree. A search warrant should not be issued absent probable cause. See *Martin*, 271 Mich App at 298. "Probable cause to issue a search warrant exists where there is a substantial basis of inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. (quotation marks and citations omitted). When examining an affidavit in support of a request for a search warrant, this Court must read the affidavit in a commonsense manner to determine whether a reasonably cautious person could have concluded that there was a substantial basis for finding probable cause. *Id*.

In the affidavit submitted in support of the search-warrant request, Officer Howe stated that witnesses had confirmed that defendant was involved in an accident on South Westnedge, and that a witness had stated that defendant's car was traveling at least 80 miles per hour when she lost control and crashed. Defendant herself admitted to an officer that she was the driver. Officer Howe stated that an officer took pictures of the crashed car and observed a bottle of liquor near the crash but did not know if it had been opened. Officer Howe also stated that defendant had a history of operating while under the influence.

Reading these statements in a commonsense manner, a reasonably cautious person could have concluded that there was a substantial basis for finding probable cause to believe that defendant's blood would reveal evidence that she was driving with alcohol in her system contrary to law. See *Martin*, 271 Mich App at 298. Because there was probable cause to support the magistrate's decision to issue the warrant, defense counsel cannot be faulted for failing to file a frivolous motion to suppress the search results on the ground that the affidavit was insufficient to support the warrant. See *Riley*, 468 Mich at 142.

## 8. CUMULATIVE ERROR

Because defendant has failed to establish any of her individual claims of ineffective assistance, her claim of cumulative error necessarily fails. See *People v LeBlanc*, 465 Mich 575, 591 n 12; 640 NW2d 246 (2002).

## D. NEWLY DISCOVERED EVIDENCE

Finally, defendant argues that she is entitled to a new trial on the basis of newly discovered evidence. Specifically, she states that she only recently recalled that she was not the driver of the car, and she now seeks to recant her trial testimony. We disagree that a new trial is warranted. Because defendant did not preserve this claim of error by raising it in the trial court, see *People v Darden*, 230 Mich App 597, 605-606; 585 NW2d 27 (1998), we review this claim for plain error, see *Carines*, 460 Mich at 763.

Our Supreme Court has recognized that a new trial may be warranted on the basis of newly discovered evidence. See *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). Such motions have not, however, been looked upon with favor because courts do not want the parties to submit evidence in "installments"; rather, in the interests of finality and absent exceptional circumstances,

it is understood that the trial represents the one and only opportunity for the parties to present their evidence. *Id*. at 280. Our Supreme Court "struck a balance between upholding the finality of judgments and unsettling judgments in the unusual case in which justice under the law requires a new trial" by adopting a four-part test whose elements a defendant must meet in order to warrant the grant of a new trial on the basis of newly discovered evidence under MCR 6.431(B). *Id*. at 280-281. Under that test, the defendant must demonstrate that "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted).

Defendant claims that she only recently recalled that someone else was driving the car, and that she only testified that she was the driver because she had been threatened by persons associated with McVay. She claims in her affidavit that she now recalls picking up a friend of McVay's and that he was the real driver. Accordingly, she wishes to recant her testimony and seeks a new trial on the basis of her newly discovered memories.

Courts traditionally put little stock in recanted testimony because it has been "regarded as suspect and untrustworthy"; nevertheless, the "discovery that testimony introduced at trial was perjured may be grounds for ordering a new trial." *People v Barbara*, 400 Mich 352, 363; 255 NW2d 171 (1977); see also *People v Smallwood*, 306 Mich 49, 54-55; 10 NW2d 303 (1943). Recanted testimony will not, however, warrant a new trial if no reasonable juror could find the testimony credible on retrial. See *People v Johnson*, 502 Mich 541, 566-567, 571; 918 NW2d 676 (2018).

The overwhelming evidence at trial established beyond a reasonable doubt that defendant was the driver of the car and that McVay was the only other person in the car. There were several witnesses to the accident—including persons who were immediately at the scene—and those witnesses did not identify anyone other than a man and a woman as the persons found in the crashed car immediately after the accident. Maikoski testified that a woman crawled from the car and a man was still trapped inside. No witnesses testified that any other person fled from the scene. Additionally, defendant admitted to a KDPS officer at the scene of the accident that she was the driver of the car, and she later admitted the same thing to a detective. When she testified at trial, defendant again confirmed that she was the driver. A photograph of McVay in the passenger seat of the crashed car was admitted into evidence. Considering all this evidence, no reasonable juror could find that defendant would be testifying truthfully if she were subsequently to testify that she had suddenly recalled that she was not the driver of the car and that she had picked up an unknown friend of McVay's, who was the actual driver. Defendant's unreliable and self-serving affidavit does not warrant a new trial. See *id*.

Affirmed.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Mark T. Boonstra

-17-